UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EDWARD RICHARDSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No.  4:17-CV-5002-EFS<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 13 & 14. Plaintiff Edward Richardson appeals the Administrative Law Judge's ("ALJ") denial of benefits. *See* ECF No. 13.  Mr. Richardson contends the ALJ erred by (1) improperly conducting a drug and alcohol abuse analysis, (2) improperly discrediting his subjective symptom testimony, and (3) improperly weighing the medical evidence. *See* ECF No. 13 at 2-3. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. *See* ECF No. 14.

The Court has reviewed the administrative record and the parties' briefing and is fully informed. For the reasons set forth below, the Court reverses the ALJ's decision and remands for additional proceedings.

ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF - 1

# I.   STATEMENT OF FACTS[1]

Plaintiff Edward Richardson was born on May 2, 1969, and is 48 years old. Administrative Record, ECF No. 10, ("AR") 290. His highest level of formal education is a GED, and he is able to communicate in English. AR 521. He stands 5'8" tall and weighs approximately 180 pounds. AR 459, 642.

Mr. Richardson has been diagnosed with a number of physical and mental conditions, including lumbar disc disorder, severe asthma, generalized anxiety Disorder, bipolar I disorder, and depression. *See* AR 465, 506-12. He experiences chronic back pain, which he has historically managed with prescription opioid drugs. *See* AR 572, 588, 652. Mr. Richardson also takes a number of other prescription drugs to manage his symptoms. *See* AR 734-42. At times, his anxiety causes him to become aggressive and verbally abusive to those around him. *See* AR 76-77.

Mr. Richardson lives with his mother and spends his days mostly at home. AR 72-76, 89. He has a significant work history as a construction worker (heavy work, semi-skilled, DOT Code: 869.664-014) and carpenter (medium work, skilled, DOT Code: 860.381-022). AR 36. Mr. Richardson has not been employed since early 2008. AR 225-29.

# II.   PROCEDURAL HISTORY AND ALJ FINDINGS

On July 15, 2012, Mr. Richardson filed an application for disability insurance benefits and a related application for supplemental security income. AR 18. In both claims, he alleged a

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

disability onset date of February 14, 2008. AR 18. Mr. Richardson's claims were denied initially and upon reconsideration. AR 18.

Mr. Richardson subsequently requested a hearing before an ALJ, which took place before ALJ Moira Ausems on December 1, 2014. AR 18. The ALJ presided over the hearing from Spokane, Washington, while Mr. Richardson and counsel appeared by video from Kennewick, Washington. AR 18. Vocational expert Daniel R. McKinney, Sr., and medical expert Anthony E. Francis, M.D., appeared telephonically. AR 18, 58-86.

On May 5, 2015, the ALJ issued a decision denying Mr. Richardson's claim. AR 18-38. In her decision, she determined Mr. Richardson has the severe impairments of lumbar degenerative disc and joint disease; mild thoracic degenerative and joint disease; mildly displaced left patella fracture; asthma; depressive disorder, not otherwise specified; generalized anxiety disorder; prescription narcotics dependence; polysubstance abuse involving methamphetamine and marijuana; and possible seizure disorder or substance abuse withdrawal seizures. AR 21.

The ALJ proceeded to find that Mr. Richardson's impairments met listings 12.04 – Affective Disorders, 12.06 – Anxiety-Related Disorders, and 12.09 – Substance Addiction Disorders but that his impairments would not meet the listings if he stopped abusing illicit substances. AR 22-25. Further, the ALJ found that absent his substance abuse, Mr. Richardson would have the residual functional capacity (RFC) to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with some postural and environmental limitations. AR 25-36. Based on this assessment, the ALJ found that absent substance abuse,

Mr. Richardson would not be able to perform his past relevant work but that there were a significant number of jobs in the national economy that the claimant could perform, including Production Assembler (light work, DOT Code: 706.687-010), Table Worker (sedentary work, DOT Code: 739.687-182), and Inspector Packer (light work, 784.687-042). AR 36-37. As a result, the ALJ concluded Mr. Richardson is not disabled under sections 216(i) and 223(d) of the Social Security Act. AR 38.

The Appeals Council denied Mr. Richardson's request for review, AR 1-2, making the ALJ's decision the final agency action for purposes of judicial review. 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. Mr. Richardson filed this suit on January 17, 2017, ECF No. 1, appealing the ALJ's decision. The parties then filed the present summary-judgment motions. ECF Nos. 13 & 14.

### III. <u>STANDARD OF REVIEW</u>

A district court's review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record

as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. **DISABILITY DETERMINATION**

A claimant is considered "disabled" for the purposes of the Social Security Act if two conditions are satisfied. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

§ 1382c(a)(3)(B). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is currently engaged in a substantial gainful activity. *Id.* § 416.920(a)(4)(i). If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, the disability claim is denied. If he does, the evaluation proceeds to step three.

Step three compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to step four.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If he can, the disability claim is denied. If he cannot, the claim is granted.

The burden of proof shifts during this analysis. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). At step five, the burden shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## V.   <u>ANALYSIS</u>

Mr. Richardson contends the ALJ erred because she: (1) improperly conducted a drug abuse analysis; (2) improperly discredited Mr. Richardson's subjective testimony of his symptoms; and (3) improperly weighed the medical evidence. *See* ECF No. 13 at 2-3. The Court evaluates each challenge to the ALJ's decision in turn.

**A.   Drug abuse analysis**

Mr. Richardson first argues that the ALJ erred by improperly concluding that he had a substance abuse disorder and that the disorder materially contributed to his disabling limitations. *See* ECF 13 at 3-11. The Commissioner responds that Mr. Richardson had the burden of proving his drug and alcohol abuse did not materially contribute to his disabling limitations and that the ALJ's conclusion

was supported by substantial evidence in the record. *See* ECF No. 14 at 3-7.

Federal law provides that a claimant cannot receive disability benefits if "alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). As the Court of Appeals for the Ninth Circuit has explained, Congress adopted this amendment as part of the Contract with America Advancement Act to "discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001).

In 2013, the Social Security Administration issued a formal ruling, SSR 13-2p, which reinforced and clarified the agency's pre-existing policies regarding Drug Addiction and Alcoholism ("DAA")[2] that existed before the ruling was issued. *See Garner v. Colvin,* 626 Fed. Appx. 699, 701 (9th Cir. 2015). SSR 13-2p requires an ALJ to have "objective medical evidence – that is, signs, symptoms, and laboratory findings – from an acceptable medical source" to make a finding that a claimant is abusing drugs or alcohol. SSR 13-2p(8)(b)(i). The regulation explains that a number of things do not constitute objective medical evidence, including (1) a third-party report referencing another physician's findings – the ALJ must "have the

---

[2] Although imprecise, the Court uses the term "DAA" because it is commonly used by the Social Security Administration. *See* SSS 13-2p(1)(a)(i) (defining DAA as "Substance Use Disorders; that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association").

source's own clinical or laboratory findings," *id.* at (8)(b)(ii); (2) self-reported drug use, *id.* at (8)(b)(i); and (3) a single positive drug test, *id.* at (8)(d)(ii).

If objective medical evidence does not exist in the record, SSR 13-2p requires the ALJ to make "every reasonable effort to develop a complete medical history." SSR 13-2p(8)(a)(iii). If objective medical evidence does exist in the record, the regulation provides that the ALJ must also identify evidence establishing a "maladaptive pattern of substance use and the other requirements for diagnosis of a Substance Abuse Disorder in the DSM." SSR 13-2p(8)(b)(ii). "This evidence must come from an acceptable medical source." *Id.* Only after properly determining that the record supports a finding of DAA may the ALJ decide whether that abuse is material to the claimant's disabling limitations.

(1) <u>Substantial evidence</u>

In this case, the ALJ found that Mr. Richardson abused illicit drugs, including methamphetamine and prescription opiates. *See* AR 21-23. Mr. Richardson argues this conclusion is not supported by objective medical evidence in the record. *See* ECF No. 13 at 3.

The ALJ supported her conclusion of DAA with lengthy references to the record. First, she referenced the opinion of Dr. Wei-Hsung Lin, Mr. Richardson's treating physician from approximately March 2012 to March 2013. *See* AR 22, 409-36, 546-47. After Mr. Richardson tested positive for methamphetamine in a drug screen urine test in February 2013, Dr. Lin sent Mr. Richardson a letter explaining he would no longer be able to prescribe him prescription opiates because

methamphetamine use is a breach of the pain contract he had signed. AR 547. He described the methamphetamine use as Mr. Richardson's "overriding health issue," and said that Mr. Richardson should no longer be prescribed anxiety medications because his "anxiety is primarily caused by the meth use." AR 547. In a phone call regarding the letter, Dr. Lin explained that "while [Mr. Richardson] may indeed have anxiety, I can't determine how truly severe it is until he has submitted himself through detox treatment for the methamphetamine use. He was not forthright about his drug use, therefore there is no basis to decide how severe his anxiety is." AR 546.

Second, the ALJ referenced that a month after Dr. Lin sent him this letter, Mr. Richardson changed primary care providers from to a Dr. Quentin Johnson. AR 22. In an appointment to establish care on March 29, 2013, Mr. Richardson asked for a refill of his pain medication, stating that his former health care provider had retired. AR 508. Dr. Johnson prescribed him more hydrocodone but informed Mr. Richardson that he did not treat chronic pain, had Mr. Richardson sign a pain contract, and recommended a follow-up appointment with a pain management specialist. AR 511.

Third, the ALJ noted a third-party medical evaluation referenced records from several other physicians, either treating or examining, that suggested Mr. Richardson was abusing illicit substances. AR 22. "The claimant self-reported on June 1, 2009 to William Spann, M.D., he had withdrawal symptoms from stopping Xanax. Dr. Spann told him he should turn himself in for treatment." AR 22, 379. In April 2010, James Kopp, M.D. found inconsistencies during his physical

examination, including positive Waddell's signs, which can indicate malingering. AR 22, 382. Dr. Kopp also recommended that Mr. Richardson be seen by an addictionologist rather than a pain clinic. AR 22, 382. Dr. Kopp examined Mr. Richardson again in October of 2010; his notes indicate he "strongly suspect[ed] narcotic addiction." AR 382. Richard Schneider, Ph.D., conducted a psychological examination of Mr. Richardson and diagnosed central nervous system side effects of narcotics and analgesics and polysubstance abuse using cocaine, methamphetamine, and marijuana. AR 22.

Fourth, the ALJ noted that Mr. Richardson had told an evaluating physician that his admission of illicit and recreational drugs in the past had been "used against him" in his worker's compensation claim. AR 23. The ALJ inferred that Mr. Richardson may have a similar motivation to conceal his methamphetamine and marijuana use from treating medical providers and the Social Security Administration. Mr. Richardson argues that this point is merely conjecture that does not constitute evidence. *See* ECF No. 13 at 9.

Finally, the ALJ suggested that Mr. Richardson's pharmacy records evidence that he abused his hydrocodone prescription. AR 22. She listed several dates on which he renewed his prescriptions before the ALJ believed it would be necessary were he taking them at the appropriate frequency, including refills on December 13, 2012, January 3, 2013, March 13, 2013, March 29, 2013, June 6, 2013, and June 7, 2013. AR 22. However, the ALJ incorrectly stated that all of Mr. Richardson's prescriptions for the listed dates were for 30 days (and thus suggestive of hydrocodone abuse). AR 22. Rather, the record

indicates some of these prescriptions were for as little as two days. AR 736-737. That being the case, the proximity of two 30-day prescriptions filled on March 13, 2013, and March 29, 2013, is the only evidence of suggestive of prescription abuse in Mr. Richardson's pharmacy records. Further, other records indicate Mr. Richardson's pharmaceutical habits were not considered abnormal by Washington State prescription monitoring programs. *See*, *e.g.*, AR 764.

Although the third-party report contained significant reference to records showing Mr. Richardson's drug abuse, the Social Security Administration's own rules provide that a third-party report cannot constitute objective medical evidence for the purposes of a drug and alcohol analysis. SSR 13-2p(8)(b)(ii). To appropriately make a finding that Mr. Richardson was abusing illicit substances, SSR 13-2p requires that the record contain clinical or laboratory findings indicating such abuse. *Id*. These findings must not only show he was using an illicit substance but also that his use supported a diagnosis of a Substance Abuse Disorder per the DSM. *Id*.

The ALJ's opinion is well-reasoned, thoughtful, and comprehensive. However, under the Court's reading of SSR 13-2p, it must remand for further development of the record. Although the record certainly suggests that Mr. Richardson has abused or currently abuses illicit substances, none of the aforementioned evidence constitutes the type of objective medical evidence required by SSR 13-2p to support a DAA finding. Nor is the Court aware of any other evidence in the record that would satisfy SSR 13-2p. Accordingly, the Court must remand this case for the ALJ to further develop the record to

determine whether Mr. Richardson had DAA during the relevant period. The ALJ should make every reasonable effort to develop a complete medical history. *See* SSR 13-2p(8)(a)(iii). At that point, if the record still does not contain objective medical evidence supporting a diagnosis of a Substance Abuse Disorder, the ALJ may not make a finding of DAA. *See* SSR 13-2p(8)(b).

    (2)  <u>Materiality of DAA</u>

Once she found that Mr. Richardson abused illicit drugs, the ALJ concluded that those addictions were a contributing factor to his disability. *See* AR 27-31. Mr. Richardson argues this conclusion is not supported by substantial evidence in the record. Because the Court finds that the ALJ did not have substantial evidence in the record to make a substance abuse finding, the Court declines to address whether the ALJ properly concluded that Mr. Richardson's substance was a material contributing factor to his disability.

**B.  Claimant's symptom testimony**

Mr. Richardson also contends the ALJ reversibly erred by discrediting his testimony regarding his subjective symptoms. ECF No. 13 at 11.

If a claimant's impairment could reasonably be expected to produce the symptoms alleged in the testimony and there is no evidence that a claimant is malingering, an ALJ may only reject a claimant's testimony about the severity of her symptoms by offering "specific, clear, and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "This is not an easy requirement to meet: '[t]he clear and convincing standard is the most demanding required in Social

Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Examples of legitimate bases to discredit a claimant's testimony include the claimant's "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct," and other "ordinary techniques of credibility evaluation." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). Where evidence of malingering exists, however, the ALJ need not provide clear and convincing reasons for dismissing a claimant's testimony. *See Smolen*, 80 F.3d at 1281.

Here, the ALJ noted significant evidence of malingering. AR 22, 31. Notably, the record indicates Mr. Richardson has shown positive Waddell's signs "suggestive of an attempt to embellish symptomatology in pursuit of secondary financial gain". AR 31. As noted above, when Mr. Richardson tested positive for methamphetamine and was informed he would no longer receive prescription narcotics from Dr. Lin, Mr. Richardson immediately found a new physician and lied, saying the reason he switched physicians was that Dr. Lin had retired. AR 22, 511, 547.

Even absent the evidence of malingering, the ALJ gave a number of reasons for discrediting Mr. Richardson's testimony, including that (1) it was inconsistent with the objective medical evidence, AR 27, (2) there were inconsistent statements made throughout the record, AR 22, 29-31, and (3) the record suggests Mr. Richardson may have reason to be dishonest with the Social Security Administration due to his past experience with a worker's compensation claim. AR 23.

The Court finds these reasons to be sufficiently clear, convincing, and specific. When reviewing an ALJ's decision, the Court is not a "trier of fact;" issues of fact are to be decided by the ALJ. *Fair*, 885 F.2d at 604. Indeed, the Court of Appeals for the Ninth Circuit has explained that "credibility determinations are the province of the ALJ." *Id*. Accordingly, the ALJ did not err by discrediting Mr. Richardson's subjective symptom testimony.

## C.  Medical evidence

Finally, Mr. Richardson contends the ALJ reversibly erred by improperly weighing the medical evidence. ECF No. 13 at 16. The Commissioner responds that the ALJ's interpretations of the medical evidence were reasonable and that Mr. Richardson simply offers an alternate interpretation of the medical evidence, which is insufficient to overturn the ALJ's decision. ECF No. 14 at 20.

"In disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison*, 759 F.3d at 1012 (quotation omitted). There are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Id*.

/

If the opinion of a treating physician is contradicted by another physician, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal quotations omitted).

**(1)** <u>Physical opinions</u>

Mr. Richardson alleges the ALJ improperly gave little weight to the opinions of Anthony Francis, M.D., Thomas Gritzka, M.D., Wei-Hsung Lin, M.D., Michael Gale, P.T., and Javiera Hutria, P.A.

      *a.* <u>*Dr. Francis*</u>

The ALJ gave little weight to the opinion of Dr. Francis because he did not have access to over a year of orthopedic chart notes when he testified at the hearing. AR 32. The ALJ concluded that the medical records, which were subsequently submitted, do not support Dr. Francis' speculative opinion that the claimant's lumbar impairment "might" equal a 1.04A listing. AR 32. Mr. Richardson argues Dr. Francis was more conclusive than the ALJ suggests and that the

subsequent medical records do not reveal sufficient improvement to deviate from the expert's conclusion. ECF No. 13 at 16.

An ALJ may reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Francis stated that he was not comfortable coming to a conclusion regarding a 1.04A listing because he was not able to review the missing orthopedic records. Thus, any medical opinion he provided was speculative and inadequately supported by medical findings. Accordingly, the ALJ did not need to provide clear and convincing reasons to reject Dr. Francis' opinion. *Id*.

### b. *Dr. Gritzka*

The ALJ gave little weight to Dr. Gritzka's opinion that Mr. Richardson would be absent from work greater than three days per month. AR 32. She did so because (1) Mr. Richardson regularly provided misleading information to physicians; (2) Dr. Gritzka is not qualified as a mental health specialist; and (3) the objective findings reported by Dr. Gritzka are out of proportion to other objective findings reported by Mr. Richardson's treating providers, suggesting he was exaggerating his symptoms. AR 32.

Mr. Richardson asserts Dr. Gritzka's opinion on absenteeism was based on his physical condition, not his psychological condition. The record does not establish this clearly. *See* AR 391 ("Although I am not a psychiatrist, the psychiatric behavior that the examinee demonstrated today would make it difficult for him to work on a regular basis on a production line.").

/

Although Mr. Richardson may not agree with the ALJ's reasoning, the ALJ did not simply ignore Dr. Gritzka's opinion or reject it with boilerplate reasons, as is contemplated in *Garrison*. *See* 759 F.3d at 1012. The ALJ gave a number of specific and legitimate reasons for rejecting Dr. Gritzka's opinion, which is all that the law of this Circuit requires. *Id.*

            c.   *Dr. Lin*

The ALJ gave little weight to the opinions of Dr. Lin in May and November of 2012 insofar as they related to Mr. Richardson's anxiety because Dr. Lin later reflected his anxiety was "primarily caused" by his methamphetamine use. AR 32, 547. She gave some weight to his opinion of January 2013 regarding Mr. Richardson's asthma because (1) he had successfully worked as a carpenter and in construction with this condition and (2) the record did not show any worsening of symptoms. AR 29, 33. Accordingly, she did not incorporate into the RFC any limitation for pulmonary irritants. AR 33. Mr. Richardson argues the ALJ erroneously dismissed Dr. Lin's opinions on anxiety because the record does not support a conclusion of substance abuse. ECF No. 13 at 19. He similarly argues the ALJ erroneously dismissed Dr. Lin's opinions on asthma because they are supported by the record. ECF No. 13 at 19.

Although Dr. Lin's letter to Mr. Richardson, AR 547, does not qualify as "objective medical evidence" for the purposes of DAA, it is nonetheless important to understanding the context of Dr. Lin's opinion regarding Mr. Richardson's health. Dr. Lin expressly stated in his letter that Mr. Richardson's methamphetamine is his overriding

health issue. AR 547. He also wrote that Mr. Richardson's anxiety was "primarily caused" by methamphetamine use. AR 547. Accordingly, the ALJ properly rejected Dr. Lin's opinions regarding Mr. Richardson's anxiety because they were made before he was aware of Mr. Richardson's methamphetamine use – indeed, Dr. Lin himself appeared to reject those opinions in his letter. AR 546-47.

Regarding Dr. Lin's opinion as to Mr. Richardson's asthma, the opinion appears to consist of two comments in a medical report, which indicated he experienced "wheezing diffusely with prolonged exp [sic] phase" and "wheezing bilaterally." AR 457-58. There is no indication this opinion relates directly to his sensitivity to pulmonary irritants. Nor did the ALJ reject this opinion entirely; rather, she gave it "some weight." AR 32-33. Accordingly, the Court finds that the ALJ's reasoning that Mr. Richardson's asthma had not interfered with his past work sufficient to award "some weight" to Dr. Lin's opinion. To the extent that her discrediting of Dr. Lin's opinion regarding asthma constitutes error, that error is harmless.

### d. *Michael Gale, P.T. & Javiera Hutria, P.A.*

The ALJ gave little weight to the June 13, 2013 opinion of physical therapist Michael Gale because (1) it was a one-time evaluation for DSHS benefits, (2) the objective medical evidence does not reflect the severity of the reported symptoms, (3) Mr. Gale's opinion considered Mr. Richardson's subjective complaints — which the ALJ properly found not credible — (4) and Mr. Gale considered his diagnoses of bipolar I and generalized anxiety disorder. AR 33. Mr. Richardson argues she did so improperly. *See* ECF No. 13 at 17-18.

Similarly, the ALJ gave little weight to the opinion of Javiera Hutria, P.A. because she did not identify her qualifications in the document containing her opinion and did not set forth sufficient "objective medical findings or rationale" in support of her opinion. AR 32. Mr. Richardson claims that the ALJ "clearly failed to accurately read this evidence, and rejected it for being from an unclear source and for not containing supporting evidence." ECF No. 13 at 19.

Generally, physical therapists and physician's assistants are considered an "other source" that is entitled to less weight than a physician. *Huff v. Astrue*, 275 F. App'x 713, 716 (9th Cir. 2008). This being the case, the ALJ provided a number of sufficiently specific and legitimate reasons to discount Mr. Gale's opinion. *See* AR 33. In the same way, the ALJ properly discounted Javiera Hutria's opinion. It is strikingly brief and conclusory. *See* AR 395-96. *See Thomas,* 278 F.3d at 957. Accordingly, the ALJ did not reversibly err by improperly evaluating the medical evidence in the record.

D. **Psychological opinions**

The ALJ gave little weight to several psychological opinions in the record. *See* AR 34-36. Mr. Richardson argues she did so wrongly. ECF No. 13 at 19-22. Because the issue of substance abuse is so closely related to the psychological opinions in the record, the Court declines to address this issue. The ALJ should reevaluate those opinions in light of any new evidence of substance abuse.[3]

---

[3] Although the ALJ will need to reevaluate the psychological opinions based on further development of the record on remand, the Court notes that — on the

## VI.  CONCLUSION

In summary, the Court finds the ALJ erred by failing to sufficiently develop the record regarding Mr. Richardson's alleged substance abuse. The Court remands this case for the ALJ to:

(1)    Further develop the record on Mr. Richardson's alleged substance abuse, basing any finding of DAA on clinical or laboratory findings present in the record.

(2)    Re-weigh the opinions of treating and evaluating psychologists in light of any new evidence relating to substance abuse.

(3)    Further develop the record as she deems appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    **JUDGMENT** is to be entered in favor of Plaintiff.

5.    An application for attorney fees may be filed by separate motion by Mr. Tree.

6.    The case shall be **CLOSED**.

///

//

/

_____

current record — the ALJ's reasoning for giving the psychological opinions little weight appears to be otherwise sufficient.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this __27th__ day of November 2017.

s/Edward F. Shea

EDWARD F. SHEA
Senior United States District Judge
